Your Honor, the first case of the morning, call 212-364, people of the State of Illinois v. Jack McCullough. On behalf of Mr. McCullough, Mr. Paul Glazier. On behalf of the people, Mr. Scott James. Mr. Manning, would you be so kind to have someone close the doors? Light coming in is difficult. Thank you. Good morning, Your Honor. Can I please report? We should not be here this morning. We should not be here this morning because no rational trier of facts could have returned a guilty verdict based on the lack of relevant probing evidence establishing the unreasonable doubt that Jack McCullough committed the abduction and murder of Maria Rudolph. And had Mr. McCullough been accorded a fair trial, he would not have been found guilty. But we are here because the judge below, acting as the trier of fact, wrongly allowed the State to present irrelevant and prejudicial evidence and at the same time wrongly denying my client the opportunity to present relevant evidence in his defense. What relevant evidence was your client deprived of? He was deprived of the opportunity to present evidence that would have established an alibi to show where he was at the time of the crime. Are you talking about the FBI? The FBI records, yes. So how is it that, in what case law do you have that would allow a police report to be admitted into evidence for anything other than impeachment or to refresh a recollection? Well, Illinois rule of evidence, Rule 803 in public records and reports, we think it would apply to allow the police reports here. But more importantly, the ancient documents exception statements in ancient documents in Section 16 of Rule 803. In Section 16 of Rule 803, don't they delineate what they're talking about with respect to ancient documents? Well, it delineates it to say statements in a document in existence 20 years or more, the authenticity of which is established constitutes an ancient document. And these reports here, which were more than 20 years old, the authenticity of which was never doubted. In fact, the State presented the evidence to the defense in discovery and said the State had no objection to their authenticity. So does that make it automatically admissible because it's in an ancient document? Aren't there two lines of cases, one that says that if there's hearsay involved and double hearsay, that there needs to be an exception that applies to every element of or every hearsay statement in order to make it admissible? No, I think the case of Dallas County that we cited in our briefs, Dallas County v. Commercial Union Insurance Company from 1961, a Fifth Circuit Court of Appeals case. That's a newspaper article that they're trying to get. Right, a very interesting case, and probably one of the interesting cases that we found in researching for this case here. It was a case involving a collapsed clock tower that just collapsed one Sunday morning in Selma, Alabama, and fallen on top of a courthouse. There was a lawsuit that resulted, and one of the issues was why were some of the bricks in the clock tower charred? And there was a discussion that possibly there was a lightning bolt struck the tower a couple of days before. There was also a claim that there was a fire in the clock tower some 58 years before. And to present, to prove that it was a fire some 58 years before, the only evidence that one party had was an unsigned, unauthored newspaper article in a local newspaper from 58 years before. And the court had some very interesting remarks and observations about hearsay in that case. It was Judge Minor Wisdom from the Fifth Circuit, and he signed for a case that Learned Hand wrote. And saying hearsay, there's reasons for hearsay, and there's reasons sometimes for, hearsay is just the start. And there are so many exceptions that rule against hearsay that it's almost not even a rule anymore. The key pieces here is, is the evidence trustworthy? Is it necessary? What about the motive to fabricate? Well, that goes to the trustworthiness of fabrication. Well, here there was a motive to fabricate. Well, no. Was there not? No. I disagree with that. We have the FBI interviewing everybody in town, or a lot of people in town, or a lot of people in Chicago. Certainly the enlistment officer in Chicago had no motive to fabricate that he saw my client that morning. The recruiting officer in Rockford had no motive to fabricate to say that he saw my client in Rockford at 7 o'clock that night. I will allow perhaps the statements from my client that were in that box might not be admissible. Okay. We'll go that far. But the statements from third parties at a time when the child was still missing, when there was everyone in town, from what we can tell from this testimony here, wanted to find this girl, certainly reasonably wanted to find her, they'd have no reason to fabricate to lie to the FBI. And these are, again, statements made by adults around the time of the offense, and that's statements of recollections of an adult back when they were 8 years old. Did the FBI report explicitly state that the recruiter saw him at 7 o'clock the night of the abduction? I believe it said he made contact with him around 7, 6.45, 7, something like that. Is it clear that he saw him that night? I mean, there is also some evidence that that same witness thought that your client's statement was incredible because the recruitment office wasn't open at night. That the office might not have been open didn't mean he wouldn't have seen them. I mean, stores are closed, and people still go to stores when they're closed. The statement that there was a happenstance encounter, that wasn't consistent with what the record required. Again, the details, you know, we're looking at not just those six pages. One of the things I want to make clear is there was more than just the six pages. The record? Well, before this court, there are the six pages. Correct. But the motion in Limine, the paragraph 9 of its defendant's motion in Limine, which is at page C194, refers to these pages and any other FBI records. But we don't have those. No, we don't. We don't have them. No, we don't. But we know that those six pages at least give the defendant the chance to present his case. When we have a 55-, 58-year-old prosecution, you've got to have a level playing field. The state can present recollections from someone 58 years ago, but the defense has to be allowed to present something, too. If all his witnesses are unavailable, he has to have something. And what the Dallas County case says is that sometimes we go beyond these exceptions or beyond the rule of hearsay to what's fair and what's trustworthy. And the evidence from the FBI, there's no reason the FBI would fabricate these reports. Counsel, I'd like to go back for just a moment to your statement that there are not two lines of cases. The Seventh Circuit, the federal rules of evidence are similar to Illinois, and Illinois does look to the federal rules, so certainly for guidance. There is a case, U.S. v. HAJA. Are you familiar with that? No, I'm not. H-A-J-D-A, 135 at 3rd, 439 at 444. And that case specifically indicates that there are two lines of cases and that one holds that every layer of hearsay must have a separate exception in order to be admissible. Otherwise, Rule 805 would be superfluous. Well, I think the exception then comes in as a statement in ancient documents. I think that's the exception to hearsay. So any statement, whether it's triple hearsay, quadruple hearsay, if it's in an old document, it's good. If it's more than 20 years old, I don't understand. Whether there's a motive to fabricate, whether there's not a motive to fabricate, whether it's double hearsay, triple hearsay, doesn't matter. If the document's 20 years old, it's coming in. I don't want to run a record saying triple, quadruple hearsay is okay. But the rule, a lot of the rule says, the rule of evidence says, if the statement is more than 20 years old and it's authentic, it's an exception to hearsay. There's also another rule of evidence in Illinois and in the federal rules, the same rule, that says you have to have separate exceptions to the hearsay rule for each layer of hearsay that you have. So what you're saying is that if we're looking at this ancient document exception, we throw out Rule 805. It just doesn't apply. I think we have to look at the circumstances. And in the circumstances here, we have a 55-, 58-year-old prosecution where the state is allowed to present whatever they want without exception, almost no exception. And the defense is not allowed to present the evidence they have simply because their witnesses are deceased or not available. And because the evidence here, the FBI reports here, were trustworthy, they should have come in. And in terms of it being a police report, we cite this Ohio appellate court case, State v. Sergeant, where the court there, the appellate court in Ohio, allowed in a 20-plus-year-old police report. That's a conviction, an old conviction. Well, I was going to say, the case there was what they call in Ohio, I think the SVRB, repeat violent offender or something like that. And they wanted to present a description of the defendant in that case's prior conviction to show what happened to kind of refute a claim that he was making. And they allowed in the police reports that were more than 20 years old because they qualify as an ancient document. But doesn't a police report, like in ancient documents, you have letters, they talk about letters, records, contracts, maps, newspapers, certificates. Those types of documents have some indicia of reliability in and of themselves, unlike a statement made in a police report, which brings me back to the same question I had for you initially, Mr. Weiser, is where or what case law do you have in Illinois that allows a police report in under an ancient document? Because my understanding of a police report is only for those two purposes, to allege or to refute. There's only two questions here. One is on an Illinois case, the answer is no, because the number of cases in Illinois where we're trying facts of older than 20, 30, 40 years is awfully slim. So there aren't any cases that have really discussed this in Illinois. That's why we talked about the Fifth Circuit and why we talked about Ohio. As far as there being a police record, as we've argued in our briefs, well, first of all, state versus sergeant shows even though it's a police report, it can still be an ancient document. As far as police reports themselves, the case law we've cited is that there's no case. The cases that have kept police reports out are those where the state is trying to get them in. When a defendant wants to get them in, there's no case saying the defendant can't get them in because the defendant has a constitutional right of confrontation. And if he's willing to waive that right to present this evidence that the police have compiled, it should come in. So that's our argument as far as the police reports, as far as the FBI reports are concerned. Counsel, really, when you look at it, didn't the defendant actually get this alibi into evidence through Detectives Steiger and Cisnefski? He got it in truth. I'm sorry. Well, I mean, they testified about what he said happened. In 2011, when they met with him, they testified. The FBI defendant said that he hitchhiked from Chicago to Rockford and then from Rockford to Sycamore because his father couldn't come pick him up. I would love to say my client's statements are sufficient evidence to justify his acquittal, but we all have the self-serving aspect of things. And the trier fact heard those statements from the defendant's mouth or through the officers. It was the defendant's statement. It wasn't from a third party. And it wasn't a matter of cumulative impeachment of a state witness. It was the defendant has a right to present a complete defense, and that includes statements from other people as well as himself. I know that if I heard a reasonable doubt, based entirely on what a defendant told the police of denying a defense, you're going to actually come back and say, oh, we have nothing here. All we have is self-serving statements from the defendant. Here, the FBI reports were from other people, from unimpeachable sources, like armed services recruiters, who would establish that my client was somewhere else at the time this thing occurred. Didn't the alibi that was given to the Seattle police contradict the alibi that was stated in the FBI reports? Which is why the FBI reports should have come in. Well, they contradicted your client. They contradicted his statements to the police. The statements, my client has never made a statement to a police officer that admits responsibility for the offense. Some details are different. But, again, having the right to present his complete defense, the trier effect could decide what to believe and what not to believe. But if the trier effect doesn't allow me to even consider, doesn't want to consider the other evidence, it's just impossible for my client to go to a fair trial that way. But, you know, as these statements were self-serving, I mean, they wouldn't be subject to any cross-examination either. And when you're talking about a fair trial, anything coming in through those FBI reports, there'd be no possibility of cross-examination. The state, when they tendered this information, said it was authentic. The state is vouching for the authenticity and accuracy of the statements. Well, I mean, anyone who takes the stand and raises their right hand to tell the truth, I mean, you can say that as well. And then cross-examination serves its own purpose. Of course, the state's going to say they're authentic FBI reports. We got them from the FBI. But there's a different issue of admissibility, is there not? And, again, the admissibility question is resolved by saying they've been in existence for more than 50 years. They're authentic. They're relevant. They're trustworthy. They should come in. If we look at the evidence that the state was allowed to present in, the same restrictions that the judge below applied to the defendant were not applied equally to the prosecution. Admitting to evidence a statement made by the defendant's late mother 37 years after Maria's disappearance, while the mother was in the hospital with terminal illness, medicated with morphine and Haldol, as one daughter said, lapsing in out of comatose nature, consciousness, a statement not corroborated by any other evidence, a statement that was not self-incriminating against the mother, a statement whose very content was open to debate. Admitting that statement as a statement against interest was nothing if not arbitrary, fanciful, and unreasonable. Why didn't you say it wasn't corroborated by any other evidence? Because all she said was he did it. What does that mean? Well, to one daughter, she said, the one daughter heard her say he did it. The other daughter was much more explicit. Those girls, Johnny, basically, he did the crime. Basically, she's talking about those girls. But she's showing no basis for her knowledge of that. First of all, we don't know, to be strict about it, we don't know if those two girls are the same two girls we all are referring to in the case here, in the corner of Archie and Center Cross. There have been two other girls. Doesn't that go to weight? Well, again, yes. But her nature at the time she was giving the statement was so unbelievable, so unacceptable, it shouldn't have come in. And when the judge says, I'm considering all the evidence, and it's all credible, that simply can't be. Some of these witnesses contradict each other. They all can't be credible. It's impossible. Now, the basis for admission for that statement was that? It was a statement against interest, which doesn't qualify. Against what interest? Penal interest, correct? Yes, yes. Well, where is the possibility of prosecution and punishment? Isn't it really abstract and theoretical, given the facts of this case? I agree, Your Honor. It's not, there's no, it was not a statement against her interest at the time she made the statement. For two reasons. One, under Illinois law in effect at the time of the 1957, there was no crime of obstructing a police officer. Maybe it's there, I couldn't find it. And the most, at most, there was an obstructing service of process by an officer. Even if she committed obstructing injustice, the case law is that the obstructing occurs when the actual misstatement to the officer occurs, which would have been in 1957, assuming there was a misstatement. Was there a federal offense for lying to the FBI at the time? I don't, I couldn't answer that. I don't know. Probably is. Don't know. But don't know the statute of limitations on that either. But the statute would have started when the lie was made, not 50 years later or 37 years later. Well, first of all, do lay people really know about a statute of limitations? And second of all, can't a statute of limitations be waived? Well, I wouldn't want to, I would think a federal would waive it. I think we're thinking technically like lawyers, not like somebody who's making an admission that they theoretically did something wrong. Well, let's not think at large. Let's think like a woman who's dying of cancer. Is she really worried that she's going to be prosecuted at that point by someone in any, or any prosecutor's office would prosecute a woman like this for doing what she did? That argument makes sense. The one about statute of limitations doesn't make a lot of sense. Okay, I'll make the sensible argument that no one's going to prosecute this woman for what she did or said 37 years ago at that point. Well, apart from that statement, I mean, wasn't really the state's evidence completely, apart from this statement, sufficient for a rational trial to find the defendant guilty? The court doesn't mention this statement one bit. Well, the court said it considered all the witnesses credible. Here's what the state's theory of this case is. I think, I can only think, because I don't know, is that an 18-year-old neighborhood boy abducts a girl from a city corner, off a street corner, then maybe brings her to his house, maybe, we don't know, maybe takes her in through a window, yet is unheard by anyone else in the house. Who's in the house? We don't know. Could be two girls who both claim to be alone at the time, but we don't know that. He then takes her to a remote location about 100 miles away, maybe with a car with flames on the side, maybe not. We don't know because no one saw the car that day. No one even saw him that day in town. He somehow kills her either by hitting her on the head, by strangling her, by stabbing her. Again, we don't know. The scientific evidence doesn't establish any or all three of these things. We don't know how she was possibly murdered, her death. Then drives back 100 miles home with this car. I don't know because no one sees the car again. That's the state's theory of the case. Your Honor, this court simply cannot affirm the judgment here based on the insufficient evidence the state has presented against my client. I see I'm out of time, so thank you very much. Thank you so much. Mr. Jacobs. Good morning, Your Honors. Good morning. Madam Presiding Justice, and may it please the Court, on this date 57 years ago, Jack McCullough kidnapped and killed Maria Riddoff. Her body was found 100 miles away from her home. It wasn't until 2011 that the defendant was arrested. He stood trial in 2012.  Why is that a statement against penal law? The woman on her deathbed that's dying of metastatic cancer is worried about being prosecuted and maybe getting probation. I don't think she has to be well-versed in the criminal justice system. I don't think that a prosecution needs to be hanging over her head in order for the requirement of the rule to be satisfied. Under the rule, the intuition is that if a person makes a statement that subjects them to liability, criminal, civil, because we have the same thing for pecuniary interests as well, if a statement subjects an individual to liability or tends to subject an individual to liability, then the rationale for the rule is satisfied because people don't go around admitting their responsibility for crimes or for torts as a matter of common sense. She didn't really admit that. She didn't say, I did anything. No, but I think, well, you know, first we take a look at Williamson v. The United States, which says that the statement need not directly, on its face, give rise to liability, but in context it certainly can. And the context here was, it was not, you know, she didn't have to say, I lied for, you know, my son 54, I'm sorry, 37 years earlier. All she had to do was say, in this sense, he did it. I mean, even if you took the defendant's version of the statement, the one that Mary Tessier testified to, where Eileen says he did it, that would be enough to subject her to liability for the federal crime of obstructing justice. Does there have to be a subjective component? There isn't any. No, there's no requirement in the rule of a subjective component. There's no requirement in the rule. I saw that the defendant pointed this out in the reply brief that he might be prosecuted by DeKalb County exclusively. I mean, there's no requirement that we have a prosecutor waiting, standing by, you know, as soon as the statement is made, and then we shuffle off to court and file an indictment. I mean, it just doesn't work that way. That has nothing to do with the rationale for the rule itself. So I think the argument is completely misplaced. It is not, and if you recall, the argument in the opening brief was phrased in terms of chambers. So that's why we get this requirement of corroboration. That's why we get the requirement of, you know, whether or not it was timely made. It's because the defendant put this in the wrong box to begin with. He said it has to satisfy the requirements of chambers, not 804b3, chambers. It obviously doesn't apply. I mean, this isn't a chamber statement. It's not an extrajudicial confession to the crime for which the defendant is currently on trial. So if you start from the wrong premise, you are going to potentially get the wrong result. But if you start from the right premise, under Rule 804b3, all the requirements were met. At the time Eileen made the statement, it tended to subject her to criminal liability. That's enough. Could it have been a dying declaration? No, because a dying declaration has to be about the circumstances of your death. So, no. I mean, to the extent that it could only have been admissible in this way, I would say. But that said, it need only be admissible on one grounds in order to have been properly admitted. All of that aside, I mean, I understand that this is an interesting issue, maybe, but I think that it's somewhat of a smokescreen, because in the context of this case, I mean, I know that the entirety of the trial defense was focused on Eileen's statement about calling in the surgeon to testify about her psychological well-being and calling in the daughter to put in a different version of the mother's statement. But that said, I mean, if you look at the facts in this trial, Justice Enoff, you had asked earlier about whether or not the State had sufficient evidence absent the statement. The answer to that question is clearly yes. The statement just did not loom that large at trial. It was not sure. But if you didn't have that statement, you would not have gone to trial. If we didn't have that statement, we would not have been able to... Let's just be clear about what the statement was. If it wasn't for that statement, this case never would have been reopened. If it wasn't for that statement, Janet never would have gone... Janet Tessian never would have gone to the State Police in 2010, and the case never would have been reopened. But all that aside, that has nothing to do with the evidence against this particular defendant tending to show that he committed that crime in 1957. I mean, if our only evidence at trial was his mother's statement on her deathbed that he did it, first of all, I can't think of anybody that would ever take that case to trial as a prosecutor. But then I would be concerned. Or I should say, then maybe you should be concerned. But if you look at the statement in the context of this case, it wasn't part of the evidence that was... Maybe we were laying the foundation to get ready to rebut the defendant's alibi with the statement, sure. But if you look at the statement in the context of the prosecution's case, its only contribution to the narrative was, this is why the case was reopened. Let's talk about the defendant's alibi. The defendant was not permitted to put his alibi in. The court would not allow the statements under any theory that the defendant wanted to try. Why would they not come in under the ancient document exception? Well, I think your line of questions to my opponent earlier explained why. The ancient documents exception merely dispenses with the requirements of authentication. It does not allow for wholesale hearsay to be admitted, particularly where there is here. There is double hearsay and then triple hearsay for the staff sergeant's statements about what the colonel had said to him, which he gives over to the FBI. So, and I think, too, when I was writing the brief, you'll see there's a section in the brief where I talk about the different hearsay statements, because I almost had looked at it as single-layer hearsay rather than double. And it wasn't until getting ready for this case I realized everything in that report is double hearsay. And then the statements of the colonel are at best triple hearsay, if the colonel even made those statements to the staff sergeant. Or I should say, if those statements were even pertinent, because the way the FBI report is written, you really can't tell what time frame the colonel is talking about. Is he talking about that night? Is he talking about the night before when the defendant was in Chicago? So let me see if I can go at this a different way. Let's just set the rules of evidence question aside for a moment and look at the statements themselves. Because, Justice Shostak, your question was, wasn't the defendant denied the right to present an alibi defense here? And the answer is no. And it has almost nothing to do with the rules of evidence and everything to do with the evidence that he sought to admit. There is nothing in these FBI reports, at least the six pages of reports that the defense tendered to the trial court, there is nothing in those FBI reports that tends to be exculpatory. There is nothing in there that is remotely compelling. Does it need to be exculpatory? I think it's a different question, because the rules of evidence are designed to make sure that we only have competent evidence admitted. But if there was something truly compelling in the FBI reports, I would think that under Chambers, not the framework for admitting a Chambers statement, but just under Chambers principles, under due process principles, maybe we would have occasion to visit the contents of the FBI reports. But there is nothing in those reports that gives a precise explanation for the defendant's whereabouts at the time of the crime. Well, certainly within an hour of her disappearance, it puts him in a different city. An hour later is not an hour before, though. I mean, him being in Rockford an hour away... So you're saying it was possible to get from Sycamore to Rockford in that... Straight up Route 39. Pardon? Straight up Route 39. I mean... In a snowstorm? Actually, I don't know that it was a snowstorm. I know that it was the night's first snowfall. Snowfall. Right. I don't... It depends on how fast one drives. And then where was the victim's body discovered? Victim's body was found out near Galena in Joe Davies County. So you're submitting that he could have gone from Sycamore to Rockford and then later... Yes, yes. And I didn't realize the import of it at the time, but when the defendant is extradited and he's sitting with the Seattle police in the stake and shake after they land in Chicago and he tells one of the officers that, oh, if I had committed the crime, I would have dumped the body in the Kishwaukee Creek, or I think near the Kishwaukee River. I didn't realize, not being from Illinois originally, but I didn't realize that that area is actually around Rockford. It runs from Rockford to Woodstock. So I think it's maybe possible that he had intended to go there. I don't believe anything that the defendant says, only because I think his incentive for disinformation. It's the same reason we distrust almost any statement a defendant makes that's not necessarily omission, because the defendant has an enormous incentive to put disinformation out there. So who knows what his plan was? I can't give you an answer to that. I can't even tell you how the victim died. I mean, I'll concede that. But I can tell you that she was murdered. So all of that aside, if you're asking me for what my hypothesis is for how the murder was committed, I can certainly give that to you. Is that what the question is? I don't think we're looking for that. Did the timer go off? No. Let's talk about the defense raises the statement of Pat Solar and talks about how the crime looked like similar to a crime that occurred back in Pennsylvania. That wasn't allowed in. Why would that not be relevant to this particular murder? It might be if Solar had any personal – well, actually, I should say, I was going to point out that Solar's – there wasn't a real basis for personal knowledge, but I sort of realized that my assumption about that comes from the weakness of the defense's offer of proof in this case. So we don't actually – I mean, the defense wasn't saying this is what Patrick Solar is going to testify to. No, but what they're saying is there could have been somebody else who committed this crime, and we weren't allowed to get into that. Well, so if we look at that as a matter of – well, in order to admit third-party suspect evidence, one has to make an offer of proof as to what the third-party suspect evidence would be. Here the defense's offer of proof was a police officer worked on this case, and at some point in time he issued a press release, and in that press release he talks about having spoken to, I believe, a Pennsylvania officer and an FBI agent. That's not third-party suspect evidence. There is nothing in there that has – that first demonstrates personal knowledge about the crime, about any of the third-party suspects. So it fails for that reason. It also fails, in my mind, because the defense's offer of proof was not this is what Patrick Solar would testify to. It was we would like to call him, here's a press release. Great, but does he still share that opinion? Does he believe – and I'm not even sure that that's relevant. Let me just say I don't think that his personal beliefs are really relevant to this whole thing. That's the more fundamental problem here is he has no personal knowledge. But are you going to call him just to impeach him? Are you going to call him – which you cannot do. Can you – I don't actually know what Patrick Solar would have testified to because the defense never told us. So the argument is the same, I mean, with respect to Patrick Solar's report or the FBI reports. The FBI reports that were not part of the offer of proof, right, the 4,000 pages of FBI reports that in the reply brief, I guess the defense now says our motion to eliminate was designed to cover everything, every ancient document that the defendant apparently had in a box assuming that they exist or that they are. The problem is that's not evidence. None of this is evidence whatsoever. So if the defense had made a proper offer of proof, we would be having a very different conversation right now. Now, the state's not required to exclude any more – every reasonable hypothesis of innocence, is it? That's not the standard. No, no. I saw that that was mentioned in the defense's opening brief. I think the weakness of that argument speaks for itself. You know, there is in this case, if we apply the proper standard of review, if we start from the right premise, we'll get the right results. If we apply the proper standard of review on reasonable doubt, there's a strong chain of circumstantial evidence here. There's an eyewitness here. There are three inmates who testified regarding the defendant's confession. I mean, their testimony, if they're under the corpus delicti rule, if there was corroboration for their testimony, if there was corroboration for their testimony, that would be enough. An eyewitness, single, positive, credible eyewitness, that would be enough. Let's talk about that eyewitness testimony. Sure. You have eyewitness testimony that is – I mean, the eyewitness testimony is essential, certainly. Sure. You have some issues with this testimony because it's so dated. And you have a woman who was – now is 57 at the time, who was 7 years old back then. I mean, the eyewitness testimony in this case is tenuous at best, is it not? Oh, I would disagree. So, first of all, let's start from the right premise that the trier fact who heard and saw her testimony found her to be credible. So, that determination, I'm not saying that it's beyond our review, but issues regarding her credibility, her certainty, those have all been resolved by the trier fact for us. There is nothing for this court to do on that subject. The only question in front of this court is whether or not, as a matter of law, her identification was so unreliable that it could not have been admitted. Well, after 55 years or so, wasn't it? Couldn't we say that as a matter of law? No. There's a case cited in the briefs, People v. Burton, which says if, as a matter of law, a witness's identification is no longer valid after the passage of time, it would lead the law to what are called foolish results, that after a certain amount of days or a certain amount of time, all of a sudden, an identification no longer becomes reliable. That, to me, looks like a de facto statute of limitations on the offense of murder. If we're saying that there is no amount of time after which an identification expires, then why do we have these statutes of limitations? Well, I don't think they say that. The time between the crime and the ID is certainly essential. It goes to wait. Right. Well, it goes to wait, but what the Burton court was saying is if you look at it as a matter of law, if you say, well, after a certain amount of time, no one can remember anything, then it would make a certain class of crimes beyond the reach of society, beyond the reach of justice. So I can only agree with it. So I understand that the identification was made 54 years later, and I believe Kathy Seaton was in her 60s at the time that she made the identification. I understand it's an incredible time lapse. You know who understood that also? The trial court judge who said, in remarking upon the credibility of the witnesses, said he found her identification, he found her testimony to be the most, he found her testimony to be credible, he found her to be the most convincing. What made a difference to me is the last thing that Kathy testified to on redirect. When she was asked, what was the last time you saw a picture of the defendant? What was the last time you saw this man's face? And her answer was December 3, 1957. That's the last time she saw him. She was positive. The trial court found her credible. There was no basis for this court to disturb that conclusion. You indicated in your brief that the defendant was sentenced solely for the offense of murder. Is that still your position, despite the two written orders in the record? Despite, yes, it is. I think that the court, Would you explain that, please? Sure. I think the court entered a sentence, and then by merging those convictions, I think it vacated those sentences. So it's, I mean, on the same written sentence. When you say merger, was there a provision, specific provision, in 1957 that talked about merger? Or was this the general principle? That was, the one-act-one-crime rule didn't exist back then. Okay. I should say maybe it did in spirit, but appellate courts had different discretion over sentencing back then. So it was very hard for me to find a published appellate court decision to talk about sentencing in those terms. But the way I resolve the issue is this, at least analytically. The trial court pronounces a sentence, right, on the transcript and in the written sentencing order. And then if you look at the line in the written sentence, and then the trial court on the record says, I'm merging these sentences. And in the written sentencing order it says, you know, I think it was five or seven years for kidnapping, three years for abduction. Those sentences to merge with count one. It was five and seven. Five and seven. Thank you. Those sentences to merge with count one. When you merge a conviction, you are, in effect, entering no sentence on it. When you merge the sentences, are you not, in effect, making them concurrent? The court didn't say I'm merging the convictions. No, no, no. The court said I'm merging the sentences. Well, I mean, is your question what would have been done back in 1950? Like, would that have counted as concurrent? Why would you merge an aggravated kidnapping or a kidnapping conviction with a murder case? In the abstract, you would not. The state isn't contesting that part of it because I think, to be fair, I think the defendant has a point that the state failed to prove up the statute of limitations aspect of the kidnapping conviction. So, to me, it's a wash. And I think the trial court judge, did he erroneously, like in the abstract, do you merge a kidnapping conviction with a murder? Absolutely not. He didn't sentence him on either. He never, I don't think he actually entered, the trial, I don't think Judge Howard entered a sentence for those convictions. But he had a judgment. I don't know. I don't know what a conviction looks like without a sentence. Because with the murder conviction, he had to have entered judgment on them, wouldn't he? No, I don't think so. I think, you know, judges routinely will merge a conviction without entering a sentence on a lesser offense. Well, without entering a sentence, but he had to enter judgment. He had to enter judgment on the verdict. In order to make it a conviction, yeah. Okay, the way I read the case law is if he does, if the trial court judge merges it, it's as though no sentence was entered. Correct. So without a sentence. But was a conviction entered? Was a conviction entered? No, without a sentence? No. Without a sentence, he was, without a sentence, no conviction was entered. So no harm, no foul, is what you're saying? Absolutely. So nothing was to be vacated? Those orders should be vacated, shouldn't those orders be vacated? There are. One order, I mean, one order. Well, the written sentencing orders, the same sentencing orders. The written sentencing order says he gets a term for these two offenses, then those terms merge. So there is nothing for this court to correct. I mean, if you look, I'm not talking about the defendant's minutes because that belongs with DOC. But the sentencing order that came out from the court, it's the typed order right in the record before the written order done by Judge Howell. If you look at that sentencing order, there's only a conviction for murder and a sentence entered on that offense. And you're not contesting that that was an error? I'm sorry? You're not contesting that that was an error, that at least one of those convictions should have stood? Theoretically, the child abduction conviction should have stood because it's certainly not a one-act-one-crime situation. No, it's not a one-act-one-crime. It's not one-act-one-crime. But tolling the statute of limitations is an element of the offense, and that was never brought out at the defendant's trial. But the state never listed the statute of limitations or anything that would toll it in the charging document, did they? I believe the state did in the kidnapping and abduction offenses. Put in the statute of limitations language. It was not proved up until sentencing. Now, let me ask you this question since we're going back and forth on this issue. If somebody would run a records check on Mr. McCullough, what would the records check show with respect to convictions? What would the records check show? Have you looked at the DOC website? Yeah. It doesn't show a conviction or a sentence for kidnapping. No, it doesn't. I think I included that in the record. I'm sorry, in the appendix to my brief. It might be the last page, but I put his DOC printout in there, which shows one offense, murder intent to kill a life sentence, and gives them a projected discharge date based on good time credit for under the 1957 sentencing code. I wasn't sure if you were asking me if you'd point them in the DOC or if you'd point them in the Leeds. Neither. I couldn't tell you about Leeds, but I can tell you at least as far as DOC or as far as I believe this court's jurisdiction is concerned, the sentences for kidnapping and abduction are not before the court. Thank you so much. Thank you. Would you want to wrap up real quickly? I'm here to answer your questions. In conclusion, I'll just say this very briefly. This is a very difficult case, obviously, but there are things about this case that I like. The facts of it, of course, are important, and I think every murder is beyond comparison and is tragic in its own way. But what I like about this case is the way the law has worked, the way we have all worked in this case, and what this case says about the system. It says that no offense, that in the passage of time, no offense will be forgotten, basically. And it really tests our commitment to the idea that there is no statute of limitations of murder, and it tests all of us who work in the system itself. And I like what that says about us as a society, as a system. I think if you look at the evidence in this case, there was sufficient evidence to find the defendant guilty. None of the evidence admitted by the state in any way prejudiced the defendant. None of the evidence that was excluded was relevant. So for those reasons, I would ask this court to affirm the defendant's conviction and sentence. Thank you. Thank you, Mr. Jacob. Mr. Weiser. Your Honor, as I try to approach the response in the order in which Mr. Jacobson made his remarks, if I could, he first accuses me of offering the court the wrong premise in discussing the statement against interest from Mrs. Tessier, saying that it wasn't until the reply brief that we talked about Rule 804B3. If he would look at page 52 of the original brief, he'll find that we cited Rule of Evidence 804B3. We talked about chambers because the courts like Bowell and cases like that referred to chambers and talked about what's trustworthy. And trustworthiness is an element of 804B3, which says that the statement is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. Now, what's trustworthy? Chambers tells us what's trustworthy in this context. One, whether the statement is made spontaneously close to an acquaintance shortly after the crime occurred. Not one point for us. Whether the statement is corroborated by other evidence. Don't we have that here? Pardon me? Don't we have the statement being corroborated by other evidence? The most corroboration we have is there are two girls, and arguably there are two girls involved in the offense in the incident. So, okay, we maybe grant them that. Three, whether the statement was self-incriminating against the declarant's interest. We assert it is not at all. And three, whether the defendant had the opportunity to cross-examine the declarant. Obviously, we don't have that either. If we look at the statement of the mother as he being the defendant committed this offense, don't we have corroboration from all this other evidence that he committed this offense, such as the inmate statements? I'm glad you brought up all the other evidence that the trial court relied on to find this. I'm glad you brought up the inmate statements, sir, because the inmate statements are not corroborated by anything else either. Again, those, I hate to keep saying this, but those statements go to wait, really. Certainly, some of them are. In Rivera, this court found there not to be enough weight for three snitches in that case. The three snitches in here are miles and miles worse than the three snitches in Rivera. You've got to, again— But get back to it. Is there no evidence that corroborates that this defendant committed this offense? No. No? No. No, his identification doesn't corroborate. Well, I mean— And I wouldn't say that's the guy that was there giving the piggyback rides, and that's your client. That doesn't corroborate the mother's statement that he did this. No, because the eyewitness said that 50 years later. So you're saying just because of the time, that means that that identification is faulty? In the Pietkowski case, our Illinois Supreme Court said that a six-month delay between the offense and a photo ID would be seriously negative in most cases. This is an ID which is 100 times worse than Pietkowski. But she had the opportunity to observe him. The lighting was there. I mean, the requirements that are—requirements are met? I don't think the opportunity was that clear. Other than the length of time? I dispute that her opportunity was odd sufficient. Before Maria disappeared, there was nothing unusual about that incident. Again, the state paints this picture of Bucolic-Sycamore in 1957, where everyone knows everyone, and apparently kids of all ages play together, and there was nothing unusual. These days, if a guy approaches two girls and wants to give a piggyback ride, they'd scream and run. Back then, they didn't run because it wasn't that unusual a thing. Her description of the man who offered the piggyback ride was generic. He was an older person. My client was just turned 18. Well, then there's an explanation for someone who's 5 or 7 seeing someone who's 18 as, quote, older, isn't there? That's true, which is also prescient enough to be able to say he weighed 150 pounds. If this 8-year-old is able to estimate weight but can't get anything beyond, oh, he's an older person. Well, he has slender face, flip in the side of his hair. Which is a common hairstyle. Large teeth. Well, and a picture of my client from that time disputes that large teeth claim. All right? They don't have enough. There's no corroboration for his statements, for her, for the mother's statement. Now the state wants to back away. The state does a great job of dancing around this case about how, oh, that wasn't really that important a thing. They just said, told their owners, this was the, this was what started this case, the mother's statement. And now they're saying it's not the linchpin of their case? Of course it is. It was very important to their case. Otherwise, why present in court? It obviously was important, and its admission was reversible error. For the state to talk about 40 minutes between Sycamore and Rockford, the state, and Justice Shastak, I think you brought up, we're actually talking about Sycamore and Rockford in a snowstorm, first snow of the year, which we know can drive worse than the first snow. We're talking about a location a half a mile off of Route 20, out between Woodbine and Stockton. A hundred miles away. So how is this guy going to get from Sycamore to Stockton to Rockford? It just boggles the mind. It's completely ludicrous. The state kind of made my point here. They said, well, I don't believe anything the defendant says. That's a great response to Justice Zeno's question about, well, didn't the defendant's alibi come in? Yeah, through his mouth. And it's common for the trier of facts to say, I don't believe anything the defendant says. But if a third party can report the same thing, that shows the alibi. That's what should have come in. Now the state says, we don't know how he was murdered. Well, the state's attorney before the trier of fact gave a theory, and now the state's trying to dance away from that. They can't have it both ways. They have to have a theory true. The law doesn't require they have to show a motive. It doesn't really require they have to cause a death as an element of the offense. But if the state has a theory and they present it to the trier of fact, they've got to stick with it here on appeal. They can't just back away and say, well, we don't know how she died, but this guy did it. That's not good. That's not evidence. As far as the pet solar evidence, at its heart, what the solar testimony shows is that Sycamore was not a closed city. And it wasn't a terrarium where only a certain number of people were in it and could have committed the offense. The solar testimony shows that somebody else, not from Sycamore, could have been going through this town. Well, now, wait a minute. There wasn't anything in there that he was seeing near this town, that he was even in Illinois. I mean, that had to do with what happened in Pennsylvania. Isn't that right? I'll answer it goes to wait. Route 20 runs from Sycamore. This is before the interstate. The 57 was before the highways. And Route 20 was a way to get from Pennsylvania, from the east, to Nebraska, where this guy lived. Jury could have, or prior fact could have rejected it. But it was a relevant, probative piece of evidence that a defendant shouldn't have been able to present. I strongly protest the state's claim that I rely on a reasonable hypothesis of innocence in my brief. He can read it again. I don't cite any case for that proposition. It's simply wrong. Well, Halsapel, you cite that. That was decided under the reasonable hypothesis of innocence, which the Supreme Court specifically rejected in People v. Pintos. Correct. And I never said that reasonable hypothesis of innocence is the standard that this court should review. All right. So then you stated earlier when you first started that it was the Collins standard. Are you using that standard? Yeah, absolutely. Absolutely. Absolutely. If anything, and I don't want to talk about the lesser sentences because, frankly, my client's doing natural life for a crime he didn't commit. Whether he has these little abduction and kidnapping charges isn't going to make a whole heck of a lot of difference to his life. Well, what do you think we should do with those other two if we find that the statute of limitations has not? Well, you've got to make it. Do they care? You've got to make it. And my point is that the state, in their brief, simply – the state hasn't waived any argument today about what I call crime or statute of limitations. They simply – their argument in their brief was that the judge didn't impose sentence on those offenses. That's absolutely wrong if you look at the written judgment order that's in our brief at Appendix 8. He said that because he felt they merged. Well, they make that argument in their brief. He's the guy in his brief. Cite 341, you know, about for waiver of or failure to cite one sentence. Cite for spailing. Cite authority. He cited no argument in his brief beyond the mere fact that he says the judge didn't impose sentence. You have to affirm. And that's absolutely not right. True, the DOC only has it for natural life, but there is a written order from Judge Hallock saying five and seven years. It's to merge. We bring this up to kind of show how sloppy this case was handled by the court below. That's the real reason. Now, no one can dispute that what happened in Sycamore in 1957 in December – what do we have, 54, whatever years ago, was a tragedy. As experienced practitioners, we know, we recognize that trying a 55-year-old case raises some problems on both sides. But basic principles like due process, like fundamental fairness, like proof beyond a reasonable doubt remain. And while – and whether that trial takes place 55 years or 55 days after the offense, the same standards apply. Those standards don't – the state's case in this – here before you, Your Honors, doesn't meet that standard. And for that reason, we're a conviction. And the other ones have to be reversed. Thank you. Gentlemen, thank you for your arguments. Thank you for your time, folks. The court is adjourned for the day. A decision will be rendered in due course. Thank you very much.